Opinion issued March 13, 2008













In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-07-00198-CV
____________

RAYMON POLAND, INDIVIDUALLY AND AS INDEPENDENT
ADMINISTRATOR OF THE ESTATE OF JESSIE POLAND, ROBERT
MARTIN, and FRANK MARTIN, Appellants

V.

DR. JAMES WILLERSON, Appellee




On Appeal from 152nd District Court
Harris County, Texas
Trial Court Cause No. 2006-38894(b)



 
MEMORANDUM OPINION

          Appellants, Raymond Poland, individually and as independent administrator
of the estate of Jessie Poland, Robert Martin, and Frank Martin (“the Poland parties”),
appeal from a judgment dismissing their health-care-liability and related claims
against appellee, Dr. James Willerson. We determine whether the trial court erred in
granting appellees’ motion to dismiss the claims against him under Texas Civil
Practice and Remedies Code section 101.106, specifically, under section 101.106(f). 
See Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f) (Vernon 2005). We affirm.
Background
          The factual recitations come principally from the Poland parties’ petitions. 
Appellant Raymon Poland was the husband of Jessie Poland; the remaining
appellants were his natural children. In August 2003, Jessie Poland, under the care
of Dr. Willerson and Dr. Ott (an appellee in a related appeal), was hospitalized at St.
Luke’s Episcopal Hospital and the Texas Heart Institute (both appellees in another
related appeal) for an elective surgical procedure to repair her heart’s mitral valve.


 
Appellee Dr. Alina Grigore, who was employed by appellee Dr. Arthur S. Keats &
Associates (both of whom are appellees in another related appeal), was the
anesthesiologist for the surgical procedure. The Poland parties alleged that, at the
time of surgery, Jessie Poland’s blood contained a level of Coumadin that the health
providers should have known rendered her blood fully anti-coagulated and, thus,
rendered surgery dangerous. The surgery was nonetheless performed; Jessie Poland
bled internally; and she died several days later of multi-system organ failure.
          In their original and first amended petitions, both of which were filed on
October 24, 2005, the Poland parties sued, among other defendants, St. Luke’s
Episcopal Hospital, the Texas Heart Institute, the University of Texas Health Science
Center at Houston (“UTHSCH”), Dr. Arthur S. Keats & Associates, and Drs. Ott,
Grigore, and Willerson for Jessie Poland’s wrongful death, for her pain and suffering
and medical costs before her death, and for her burial expenses. In their first
amended petition, the Poland parties alleged that Dr. Willerson “practices medicine
at the Texas Heart Institute” and that UTHSCH could be served “by serving its
registered agent, Dr. James T. Willerson.”
          On December 5, 2005, Dr. Willerson, through Frank Doyle, his counsel at the
firm of Johnson, Spalding, Doyle, West & Trent, filed his original answer, which
asserted, among other matters, the affirmative defense of the statute of limitations. 
Nonetheless, on December 8, 2005, the Attorney General’s Office, asserting that it
represented both UTHSCH and Dr. Willerson, filed an original answer on behalf of
UTHSCH and Dr. Willerson that also contained a motion to dismiss Dr. Willerson
under Texas Civil Practice & Remedies Code section 101.106(e). See Tex. Civ.
Prac. & Rem. Code Ann. § 101.106(e) (Vernon 2005) (“If a suit is filed under this
chapter against both a governmental unit and any of its employees, the employees
shall immediately be dismissed on the filing of a motion by the governmental unit.”). 
The dismissal portion of the pleading alleged that Dr. Willerson was “an employee
of [UTHSCH]” who was eligible to be dismissed under section 101.106(e). The trial
court did not rule on this motion, and no one addresses on appeal the propriety of the
court’s failure to rule on it; nor did Dr. Willerson at any time assert that he should be
dismissed because UTHSCH had carried its burden under section 101.106(e). See
Villasan v. O’Rourke, 166 S.W.3d 752, 758 (Tex. App.—Beaumont 2005, pet. filed)
(“We hold that under Code section 101.106[(e)], the governmental agency perfects
the statutory right to a dismissal of its employee upon the filing of a motion to
dismiss, and the employee may subsequently rely on the duty created by the motion
to require the trial judge to dismiss the claims against him.”).
          Some time thereafter, the Poland parties and Dr. Willerson agreed to nonsuit
Dr. Willerson without prejudice. On January 11, 2006, Frank Doyle and the Poland
parties’ counsel signed the following rule 11 agreement to memorialize their
understanding:
As we discussed, this letter is to memorialize our agreement that
[the Poland parties] have agreed to dismiss Defendant, James Willerson,
M.D. without prejudice, from the above-referenced case. It is
understood that should Plaintiffs determine from discovery that James
Willerson, M.D. is a proper party to this case, he can be served by
certified mail with an amended petition through me as his attorney of
record. 
 
The parties also agree:
 
1.The statute of limitations is tolled from the date of this
letter, until September 15, 2006. Plaintiffs agree that
Defendant, James Willerson, M.D., by entering this
agreement has not waived any statute of limitations defense
he may have up to and including the date of this agreement.
 
2.All Chapter 74 deadlines are tolled as to Defendant, James
Willerson, M.D.

On March 8, 2006, the Poland parties’ notice of nonsuit of Dr. Willerson was filed
in the trial court. Accordingly, at this point, Dr. Willerson was no longer a party to
the litigation, although UTHSCH still was.
          That same day, UTHSCH moved to dismiss the claims against it for the Poland
parties’ failure to have timely served their expert report on it. See Tex. Civ. Prac. &
Rem. Code Ann. § 74.351(a), (b) (Vernon Supp. 2007). Before the trial court ruled
on that motion, the Poland parties nonsuited UTHSCH without prejudice. The trial
court signed an order nonsuiting UTHSCH on May 22, 2006.
          On May 19, 2006, after the Poland parties had filed their notice of nonsuit of
UTHSCH, the Poland parties amended their petition to re-add Dr. Willerson to the
lawsuit; their third amended petition, filed June 29, 2006, did the same.


 The third
amended, “live” petition alleged the following causes of action or theories of recovery
against all defendants, including Dr. Willerson: (1) negligence, (2) gross negligence,
(3) actual and constructive fraud, (4) intentional infliction of emotional distress, (5)
assault and battery, (6) intentional and negligent abandonment, (7) breach of fiduciary
duties, (8) “negligent breach of fiduciary duties,” (9) malpractice, (10) “lack of proper
informed consent,” (11) “tampering with official medical records,” (12) “forgery,”
(13) violations of the Texas Deceptive Trade Practices–Consumer Protection Act
(“DTPA”),


 and (14) conspiracy among all defendants. This “live,” third amended
petition also added allegations that the defendants altered Jessie Poland’s medical
records and forged Raymon Poland’s signature on unspecified hospital documents. 
The Poland parties sought actual and exemplary damages.
          Unlike other defendants, Dr. Willerson did not object to or move to strike the
Poland parties’ live petition to the extent that it attempted to recast health-care-liability claims as other causes of action. However, Dr. Willerson filed two motions
to dismiss the Poland parties’ claims against him. The first motion invoked Texas
Civil Practice & Remedies Code section 74.351(b) and sought dismissal for failure
to have served an expert report upon him or his attorney within the statutorily
required 120 days, even taking into account the rule 11 agreement’s tolling period. 
See Tex. Civ. Prac. & Rem. Code Ann. § 74.351(b) (Vernon 2005) (providing that
trial court must dismiss health-care-liability claim against defendant if claimant fails
to serve expert’s report and curriculum vitae on that defendant within period
specified by section 74.351(a)); Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01,
2003 Tex. Gen. Laws 847, 875 (providing that claimant must serve defendant against
whom health-care-liability claim is asserted with expert’s report and curriculum vitae
within 120 days of claim’s filing), amended by Act of May 18, 2005, 79th Leg., R.S.,
ch. 635, §§ 1–3, 2005 Tex. Gen. Laws 1590 (current version at Tex. Civ. Prac. &
Rem. Code Ann. § 74.351(a) (Vernon Supp. 2007)).
          The second motion to dismiss relied on Texas Civil Practice and Remedies
Code section 101.106, asserting both subsection (a) and (f) as bases for dismissal. 
See Tex. Civ. Prac. & Rem. Code Ann. § 101.106(a) (Vernon 2005) (“The filing of
a suit under this chapter against a governmental unit constitutes an irrevocable
election by the plaintiff and immediately and forever bars any suit or recovery by the
plaintiff against any individual employee of the governmental unit regarding the same
subject matter.”); id. § 101.106(f) (Vernon 2005) (“If a suit is filed against an
employee of a governmental unit based on conduct within the general scope of that
employee’s employment and if it could have been brought under this chapter against
the governmental unit, the suit is considered to be against the employee in the
employee’s official capacity only. On the employee’s motion, the suit against the
employee shall be dismissed unless the plaintiff files amended pleadings dismissing
the employee and naming the governmental unit as defendant on or before the 30th
day after the date the motion is filed.”).
          Dr. Willerson’s motions to dismiss were both heard on September 8, 2006. No
additional evidence was presented at the hearing. The trial court orally ruled that it
was dismissing Dr. Willerson “under 101.106” (that is, it was granting his dismissal
motion asserted under section 101.106) and that the issue of whether the expert report
was served timely was “moot as to Dr. Willerson” (that is, the trial court did not rule
on the merits of Dr. Willerson’s section 74.351(b) dismissal motion, but ruled that it
was moot). The trial court’s verbal ruling did not specify whether it was dismissing
Dr. Willerson under section 101.106(a) or 101.106(f).
          The order that the trial court signed dismissing the claims against Dr. Willerson 
with prejudice, however, was specific:
ON THIS DAY, came on to be heard Defendant JAMES
WILLERSON, M.D.’s, Motion to Dismiss Pursuant to CPRC
§ 101.106(f) and this Court, having considered same, any Response
thereto, and argument of counsel, is of the opinion that Defendant’s
Motion is good and should, in all things, be GRANTED. It is, therefore, 
 
ORDERED, ADJUDGED, AND DECREED that [the Poland
parties’] causes of action against Defendant JAMES WILLERSON,
M.D., are hereby dismissed with prejudice to the re-filing of same
pursuant to § 101.106(f) of the Texas Civil Practice & Remedies Code.

(Emphasis added.) The trial court did not enter findings of fact or conclusions of law.
          The Poland parties appealed the adverse rulings dismissing all of their claims
against Drs. Ott, Willerson, and Grigore and Arthur S. Keats & Associates, and St.
Luke’s Episcopal Hospital and the Texas Heart Institute appealed the denial of their
motion to dismiss—all under the same appellate cause number.


 Although the
interlocutory order appealed by St. Luke’s Episcopal Hospital and the Texas Heart
Institute was permitted by statute, this was not true of every appealed order. See Tex.
Civ. Prac. & Rem. Code Ann. § 51.014(a) (Vernon 1997 & Supp. 2007). On
December 18, 2006, this Court, upon the parties’ motion, abated the appeal and
remanded the cause for the trial court—upon various parties’ motions, filed in the
trial court after appeal, to sever the interlocutory orders rendered in favor of Dr. Ott,
of Dr. Willerson, and of Dr. Grigore and Dr. Arthur S. Keats & Associates—to render
final and appealable those interlocutory rulings that had not been appealable on an
interlocutory basis. Upon remand, the trial court severed the rulings against the
specified defendants from the underlying cause, rendering a final judgment in the
newly severed cause numbers involving Dr. Ott, Dr. Willerson, and Dr. Grigore and
Dr. Arthur S. Keats & Associates. On March 15, 2007, this Court reinstated the
appeal, assigning different appellate cause numbers to the appeal of what had by then
become four separate rulings in four separate trial-court cause numbers. This opinion
and judgment concern the Poland parties’ appeal of the dismissal order rendered in
favor of Dr. Willerson.
Section 101.106(f)
          Under one issue, the Poland parties contend that the trial court erred in granting
Dr. Willerson’s motion to dismiss under section 101.106(f). 
A.      Standard of Review
          When, as here (as explained below), our review of a ruling on a motion to
dismiss under section 101.106(f) involves a question of law applied to uncontroverted
facts, our standard of review can be described as de novo. See Turner v. Zellers, 232
S.W.3d 414, 418 (Tex. App.—Dallas 2007, no pet.); see also Williams v. Nealon, 199
S.W.3d 462, 464 (Tex. App.—Houston [1st Dist.] 2006, pet. filed) (although
providing that ruling under section 101.106(f) is generally reviewed for abuse of
discretion, also recognizing that ruling that is “contrary to case law” is inherent
“abuse of discretion,” thereby indicating that trial court will, as matter of law, abuse
its discretion if it misapplies law); cf. Intracare Hosp. N. v. Campbell, 222 S.W.3d
790, 795 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (in considering standard of
review of ruling under Texas Civil Practice and Remedies Code section 74.351,
noting, “[A] trial court has no discretion in determining what the law is, which law
governs, or how to apply the law. . . . Accordingly, the standard of review of this
particular ruling [concerning a pure question of law] is the same, regardless of
whether it is described as abuse of discretion or de novo.”) (citation omitted). Our
scope of review “is limited to those arguments raised in the motion to dismiss.” 
Williams, 199 S.W.3d at 464–65.
B.      The Law
          Section 101.106(f) provides:
If a suit is filed against an employee of a governmental unit based on
conduct within the general scope of that employee’s employment and if
it could have been brought under this chapter against the governmental
unit, the suit is considered to be against the employee in the employee’s
official capacity only. On the employee’s motion, the suit against the
employee shall be dismissed unless the plaintiff files amended pleadings
dismissing the employee and naming the governmental unit as defendant
on or before the 30th day after the date the motion is filed.

Tex. Civ. Prac. & Rem. Code Ann. § 101.106(f). “Therefore, to be entitled to a
dismissal under section 101.106(f) a defendant must show that the plaintiff’s suit (1)
was based on conduct within the general scope of the defendant’s employment with
a governmental unit and (2) could have been brought under the Texas Tort Claims
Act against that governmental unit.” Williams, 199 S.W.3d at 466. The first
component of the test actually encompasses two inquiries: whether the individual
defendant was an employee of a governmental unit and whether he was acting in the
scope of that employment at the relevant time. See Lanphier v. Avis, No. 06-07-00074-CV, 2008 WL 89755, at *4 n.3 (Tex. App.—Texarkana Jan. 10, 2008, pet.
filed); Turner, 232 S.W.3d at 417.
          “The purpose of section 101.106 is to force a plaintiff to choose whether he
will seek to impose tort liability on a governmental unit or on governmental
employees, individually.” Williams, 199 S.W.3d at 465. “The Legislature’s apparent
goal of reducing cost is enhanced by the amended statutory provisions because they
narrow the issues for trial, thereby reducing the delay and expense otherwise
associated with discovery related to theories no longer relevant in light of the election
made by claimants on their initial filing of suit.” Villasan, 166 S.W.3d at 760. The
section (specifically, subsection (f)) provides “a procedure for dismissing government
employees and substituting the governmental entity in cases in which only employees
were named as defendants,” allowing “the government employee whose conduct is
alleged to have been within the scope of employment to force the plaintiff to amend
the suit and name the governmental entity as the sole defendant.” Tejada v. Rowe,
207 S.W.3d 920, 924 (Tex. App.—Beaumont 2006, pet. filed); Villasan, 166 S.W.3d
at 758. “[T]he statute strongly favors dismissal of governmental employees.” 
Waxahachie Indep. Sch. Dist. v. Johnson, 181 S.W.3d 781, 785 (Tex. App.—Waco
2005, pet. filed).
C.      Discussion
          In one issue in their briefing and at oral argument, the Poland parties raised
several challenges to the trial court’s granting of Dr. Willerson’s dismissal motion
under section 101.106.
 
 
          1.       Whether the Poland parties failed properly to assert on appeal that
their claims were not brought under the Texas Tort Claims Act
(“TTCA”)




          The Poland parties did not assert below or in their appellate briefing that the
claims against Dr. Willerson were not “brought under” the TTCA, so that section
101.106—which requires that the TTCA waive sovereign immunity from suit before
the plaintiff must elect to sue the governmental unit, rather than its employee—did
not apply. See Tex. Civ. Prac. & Rem. Code Ann. §§ 101.106(a), (f) (providing that
section 101.106 applies only if suit is brought “under this chapter”—that is, if suit
asserts claim for which TTCA waives immunity from suit). Likewise, they did not
challenge below or in their appellate briefing the second element of section
101.106(f): whether their suit “could have been brought under the Texas Tort Claims
Act against th[e] governmental unit.” Williams, 199 S.W.3d at 466. 
          Nevertheless, at oral argument before this Court, the Poland parties argued for
the first time that their actual allegations against Dr. Willerson were for professional
negligence in his treatment of Jessie Poland—a health-care-liability claim within the
scope of Texas Civil Practice and Remedies Code chapter 74, but not a claim subject
to the TTCA’s waiver of sovereign immunity from suit. See id. (indicating that claim
of medical negligence “is not encompassed by the Texas Tort Claim Act’s limited
waiver of sovereign immunity.”). The Poland parties further asserted at oral
argument that because none of their petitions implicated the TTCA for this reason,
the election-of-remedies provisions of section 101.106 were not triggered. See id.
(“Because medical negligence is the basis for Williams’s claims against the doctors,
the doctors cannot meet the second requirement of section 101.106(f). That is, the
doctors have not shown that Williams’s claims could have been brought against
UTMB under the Texas Tort Claims Act.”).
          Absent fundamental error, we may not reverse a judgment for a reason not
asserted by the appellant as a challenge on appeal. See, e.g., Walling v. Metcalfe, 863
S.W.2d 56, 58 (Tex. 1993) (“We have held repeatedly that the courts of appeals may
not reverse the judgment of a trial court for a reason not raised in a point of error.”);
see also Britton v. Tex. Dep’t of Crim. Justice, 95 S.W.3d 676, 681 n.6 (Tex.
App.—Houston [1st Dist.] 2002, no pet.) (noting that exception to Walling v.
Metcalfe rule exists when trial court commits fundamental error); Pirtle v. Gregory,
629 S.W.2d 919, 919–20 (Tex. 1982) (noting that fundamental error is rare). An
appellate challenge must normally be raised in the appellant’s opening brief—unless,
for example, the appellant moves for and is granted leave to amend its brief. See Tex.
R. App. P. 38.7 (“A brief may be amended or supplemented whenever justice requires,
on whatever reasonable terms the court may prescribe.”). The Poland parties did not
assert in their brief the new challenge that they raised at oral argument, nor have they
sought leave to amend their brief to add such a challenge. We will not consider a
wholly new challenge that the Poland parties raised during oral argument when that
argument was not raised anywhere in their appellate briefing. See Tex. R. App. P.
39.2 (“Oral argument should emphasize and clarify the written arguments in the
briefs.”) (emphasis added); El Paso Natural Gas Co. v. Strayhorn, 208 S.W.3d 676,
681 (Tex. App.—Texarkana 2006, no pet.) (“Oral argument should be limited to the
issues and arguments raised in the written briefing. . . . Counsel should not waylay
opponents at oral argument by raising new issues or alternative arguments not first
presented in their briefs.”); accord French v. Gill, 206 S.W.3d 737, 743 (Tex.
App.—Texarkana 2006, no pet.) (“An issue or counter-issue may not be raised for the
first time at oral argument unless the issue has been first presented in the parties’
written brief. . . . Because Gill and Riccio did not raise the issue of ‘judicial
admissions’ in their written brief, we are precluded from considering it.”) (citations
omitted); Ajibade v. Edinburg Gen. Hosp., 22 S.W.3d 37, 40 (Tex. App.—Corpus
Christi 2000, pet. struck).
          We overrule the challenge, raised for the first time at oral argument, that the
Poland parties’ claims against Dr. Willerson were for professional negligence (i.e.,
that they were health-care-liability claims), so that section 101.106 was not triggered.



          2.       Whether Dr. Willerson carried his burden of showing his
employment by UTHSCH
          In their brief, the Poland parties first argue that Dr. Willerson did not produce
any evidence that he was an employee of UTHSCH at the time of the incident for
which suit was filed. See Tex. Civ. Prac. & Rem. Code Ann. § 101.001(2) (Vernon
2005) (defining “employee” as “a person, including an officer or agent, who is in the
paid service of a governmental unit by competent authority, but does not include an
independent contractor, an agent or employee of an independent contractor, or a
person who performs tasks the details of which the governmental unit does not have
the legal right to control.”). 
          We disagree. Dr. Willerson’s affidavit, which he tendered in support of his
motion to dismiss under section 101.106, averred, “In August of 2003, I was
employed by [UTHSCH]. At all times relevant to the issues in this lawsuit, I was a
salaried employee of [UTHSCH].” This evidence carried Dr. Willerson’s burden of
showing that he was UTHSCH’s employee. See Tejada, 207 S.W.3d at 924 (finding
sufficient affidavit and motion’s verified allegations that defendants simply were
employees of governmental unit); Hall v. Provost, 232 S.W.3d 926, 928 (Tex.
App.—Dallas 2007, no pet.) (although issue of employee status was undisputed in
that case, noting that defendant’s affidavit averred, “I am currently and continuously
have been since 2003, an employee of [the governmental unit], in the Department of
Surgery.”). 
          In response to this affidavit evidence, the Poland parties rely on appeal, as they
did below, on three documents. First, they cite an unauthenticated “explanation of
benefits” statement issued by Jessie Poland’s insurer, which designated Dr. Willerson
as the “provider” of the medical services and indicated that payment was made to the
“provider.” Assuming without deciding that this unauthenticated, unobjected-to
document constituted competent evidence, it did not refute Dr. Willerson’s affidavit
testimony because it did not purport to identify who Dr. Willerson’s employer was
or even whether he was an employee. Second, the Poland parties cite the affidavit
testimony of UTHSCH’s Health Care Risk Manager that “[n]one of the remaining
physicians named in this lawsuit were employees, agents, ostensible agents, legal
representatives, successors, physicians, residents, fellows, affiliates, or servants of the
[UTHSCH] at the time of the incident made the basis of this lawsuit.” However, this
affidavit was made 22 days after Dr. Willerson had been nonsuited from the lawsuit. 
Third, the Poland parties cite unauthenticated print-outs from various websites
indicating that Dr. Willerson was the medical director, president-elect, chief of
cardiology, or director of cardiology at the Texas Heart Institute. Again assuming
without deciding that these unauthenticated, unobjected-to documents rose to the
level of evidence, they did not refute that Dr. Willerson was a paid employee of
UTHSCH at the relevant time because all were printed in 2006, most contained
undated content, and some contained a content date post-dating August 2003. 
Furthermore, articles indicating that Dr. Willerson had served as an officer elsewhere
did not controvert Dr. Willerson’s testimony because they did not indicate that he was
an employee performing medical services in those positions or whether those
positions excluded his employment elsewhere. The documents and affidavit on
which the Poland parties rely on appeal thus did not raise a fact issue on Dr.
Willerson’s employment status.


 
          We overrule this challenge under the Poland parties’ issue.
 
          3.       Whether Dr. Willerson carried his burden of showing that he was
working within the scope of his employment with UTHSCH
          The Poland parties next argue in their brief that Dr. Willerson did not produce
any evidence that the negligent acts or omissions that he was alleged to have
committed were performed in the scope of his employment with UTHSCH. See Tex.
Civ. Prac. & Rem. Code Ann. § 101.001(5) (Vernon 2005) (defining “scope of
employment” as “the performance for a governmental unit of the duties of an
employee’s office or employment and includes being in or about the performance of
a task lawfully assigned to an employee by competent authority.”).
          We disagree. Dr. Willerson carried his burden by affidavit: “Medical care
provided to patients at all times relevant hereto, including Jessie Poland, was
provided in the course and scope of my employment with [UTHSCH].” See Tejada,
207 S.W.3d at 924 (finding sufficient affidavit averring that “‘[a]ll of my interaction
with the patient . . . was within the general scope of my employment with UTMB’”
and motion’s verified allegations that defendant “provided medical care to Tejada in
her official capacity as an employee of UTMB”); Hall, 232 S.W.3d at 928 (although
issue of scope of employment was undisputed in that case, noting that defendant’s
affidavit averred, “At all times during the care and treatment of Charla Hall, I was
acting within the general scope of my employment with [the governmental unit].”);
Williams, 199 S.W.3d at 465–66 (although issue of scope of employment was
undisputed in that case, noting that defendant doctors’ affidavits each averred that
“[a]ll of my interaction with the patient . . . was within the scope of my employment
with UTMB,” implying that that evidence supported this issue).
          Contrary to the Poland parties’ assertions, section 101.106(f) did not require
that Dr. Willerson use the procedural vehicle of a summary-judgment motion or that
he meet the strict requirements of affidavits submitted under that rule. See Tex. Civ.
Prac. & Rem. Code Ann. § 101.106(f) (not invoking summary-judgment-like
procedures and speaking solely in terms of employee’s “motion”); see also Lanphier,
2008 WL 89755, at * 1 (reviewing ruling on dismissal motion, rather than summary-judgment motion, asserted under section 101.106(f)); Hall, 232 S.W.3d at 926–27
(same); Turner ,232 S.W.3d at 415 (same); Kanlic v. Meyer, 230 S.W.3d 889, 890–91
(Tex. App.—El Paso 2007, pet. filed) (same); Clark v. Sell, 228 S.W.3d 873, 873
(Tex. App.—Amarillo 2007, pet. filed) (same); Sheth v. Dearen, 225 S.W.3d 828, 829
(Tex. App.—Houston [14th Dist.] 2007, no pet.) (same); Tejada, 207 S.W.3d at
921–22 (same); Williams, 199 S.W.3d at 463 (same); Phillips v. Dafonte, 187 S.W.3d
669, 671 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (same). The Poland parties
have cited no authority to the contrary, and we have found none.


 
          We overrule this argument under the Poland parties’ issue.
          4.       Whether Dr. Willerson carried his burden of showing that
UTHSCH was a governmental unit

          In their third argument, the Poland parties argue that Dr. Willerson did not
produce any evidence that UTHSCH was a governmental unit.
          The Poland parties’ responses to Dr. Willerson’s motion to dismiss repeatedly
stated or implicitly represented that UTHSCH was a governmental unit and
that—provided that Dr. Willerson was its employee acting within the scope of that
employment when he treated Jessie Poland—the TTCA waived immunity from suit
against UTHSCH for Dr. Willerson’s actions, which they described (as they do on
appeal) as “the improper use of [the] medication” Coumadin.


 
          “[A] true judicial admission. . . is a formal waiver of proof usually found in
pleadings or the stipulations of the parties[,] . . . is conclusive upon the party making
it, . . . relieves the opposing party’s burden of proving the admitted fact, and bars the
admitting party from disputing it.” Mendoza v. Fid. & Guar. Ins. Underwriters, 606
S.W.2d 692, 694 (Tex. 1980). The admission can be contained in “live” motions and
responses thereto, as well as in petitions and answers. See Holy Cross Church of God
in Christ v. Wolf, 44 S.W.3d 562, 568 (Tex. 2001) (considering judicial admission
contained in summary-judgment response, counter-motion for summary judgment,
and appellate brief); Zeecon Wireless Internet, L.L.C. v. McEwen, 212 S.W.3d 764,
767 (Tex. App.—Austin 2006, no pet.) (noting that judicial admission was contained
in motion to strike amended answer); Mobil Oil Corp. v. Ellender, 934 S.W.2d 439,
465 (Tex. App.—Beaumont 1996) (noting that judicial admission was contained in
motion to restyle case following settlement), aff’d in part, rev’d in part on other
grounds, 968 S.W.2d 917 (Tex. 1998). To be a judicial admission, the statement must
be “clear, deliberate, and unequivocal.” Horizon/CMS Healthcare Corp. v. Auld, 34
S.W.3d 887, 905 (Tex. 2000) (quoting Regency Advantage Ltd. P’ship v. Bingo
Idea-Watauga, Inc., 936 S.W.2d 275, 278 (Tex. 1996)). 
          Despite its clear, repeated representations that UTHSCH was a governmental
unit, the Poland parties’ memorandum below also recited:
Dr. Willerson never even presented evidence that [UTHSCH] is a
governmental unit. In Clemons v. Citizens Medical Center, 54 S.W.3d
463 (Tex. App.—Corpus Christi), it was held that before a hospital may
invoke the doctrine of sovereign immunity, it must establish its status as
a division of the state, and that a claim of sovereign immunity must have
supporting evidence. In Clemons, the affidavit of the hospital was
attached to its motion for summary judgment, showing the details of
who controls the doctor’s diagnosis and treatment of patients. Dr.
Willerson has not done so.

This one statement was preceded by a discussion as to whether Dr. Willerson had
shown that he was UTHSCH’s employee, and it was followed by assertions indicating
that UTHSCH was a governmental unit and that Dr. Willerson could not assert or
prevail on the affirmative defense of official immunity from liability. 
          Whatever this one statement quoted in the preceding paragraph meant, it did
not render the Poland parties’ concessions about UTHSCH’s governmental status
ambiguous: it was at most a statement that Dr. Willerson did not present evidence of
UTHSCH’s governmental status; in contrast, the other cited statements clearly
recognized that UTHSCH was in reality a governmental unit. That is, the Poland
parties admitted the underlying fact that Dr. Willerson had the burden to prove, then
at most noted that Dr. Willerson had not offered additional evidence to prove the fact
that they were admitting. Because the underlying fact was judicially admitted, Dr.
Willerson was relieved of any burden that he might have had to offer independent
evidence of that fact. See, e.g., Smith v. Altman, 26 S.W.3d 705, 708–09 (Tex.
App.—Waco 2000, pet. dism’d w.o.j.) (“‘In Texas a party may use a formal judicial
admission made by a party opponent as a substitute for evidence . . . .’”) (quoting 1A
R. Ray, Texas Practice: Law of Evidence § 1127 (3d ed. Supp. 1986)).
          But even if this one statement quoted above could somehow prevent a judicial
admission from arising as to UTHSCH’s governmental status, it is well-established
that UTHSCH is a governmental unit, and the trial court would have been entitled to
take judicial notice of that fact (as can we).


 
          We overrule this argument under the Poland parties’ issue. 
          5.       Whether Dr. Willerson’s official immunity from liability had any
bearing on the correctness of the trial court’s ruling

          In their fourth argument, the Poland parties argue that “[t]he trial court erred
in dismissing Dr. Willerson because he could only claim official immunity [from
liability] if [UTHSCH] could claim sovereign immunity, and it could not.” They also
argue that Dr. Willerson waived any “claim of official immunity” because he never
affirmatively pleaded it in his answer.
          Dr. Willerson’s motion to dismiss was based on sections 101.106(a) and (f), not
on the affirmative defense of official immunity from liability. As noted above,
current section 101.106 is an election-of-remedies provision, requiring the plaintiff
carefully to select, at the time of the suit’s filing, which defendant—the governmental
unit or its employee—to sue. See Tex. Civ. Prac. & Rem. Code Ann. § 101.106;
Williams, 199 S.W.3d at 465; Villasan, 166 S.W.3d at 758. In contrast, official
immunity from liability is an affirmative defense that prevents governmental officials
from being liable to a claimant when they are acting within the scope of their
authority in performing their discretionary duties in good faith. See, e.g., Ballantyne
v. Champion Builders, Inc., 144 S.W.3d 417, 424 (Tex. 2004). Section 101.106(f),
which our discussion concerns, does not concern official immunity from liability, but
is instead an election-of-remedies provision requiring the substitution of the
governmental employer for the employee in certain circumstances. 
          We overrule this argument under the Poland parties’ issue.
          6.       Whether the rule 11 agreement estopped Dr. Willerson from
“claiming a section 101.106 defense”
          In their final argument under their issue, the Poland parties argue that “Dr.
Willerson was estopped from claiming a Section 101.106 defense based on his Rule
11 agreement.” Specifically, the Poland parties argue that “by Dr. Willerson[’s]
stating that he has not waived any Statute of Limitations defenses, Dr. Willerson
thereby waived all other defenses. Since he had waived one particular defense, it can
be reasonably interpreted . . . that . . . Dr. Willerson was waiving all other defenses
with one exception noted in the agreement.” (Emphasis in original.)
          By that agreement, Dr. Willerson did not waive any potential defenses: in fact,
the agreement expressly preserved an affirmative defense—that of the statute of
limitations. All that the agreement did was to toll the statute of limitations and “[a]ll
[Texas Civil Practice and Remedies Code] Chapter 74 deadlines.” Under the
language of this agreement, the express preservation of one affirmative defense
cannot reasonably be construed as the abandonment of all other potential defenses of
any kind whatsoever. 
          We overrule this final argument under the Poland parties’ issue, and we
overrule the issue in its entirety.
Conclusion
          We affirm the judgment of the trial court.

 
Tim Taft
Justice

Panel consists of Justices Taft, Keyes, and Alcala.